and Mr. Todd when you're ready. Let me say this to counsel. We did grant the motion to look at the gun and the marshal brought the gun to us. We just reviewed it. We consider it part of the record. It's as if we had a photograph but we looked at the real gun and looked at the serial number which is at issue in this case and so you can both be aware that we've seen that and we'll go ahead now. Thank you. May it please the court. To determine whether the guideline enhancement for having an obliterated or altered serial number apply or should apply requires an answer to a very straightforward question. A practical standard which at least six of the circuit courts use and that is this. Is the correct serial number legible to the naked eye without resorting to any specialized recovery technique or tool? The answer to that question is no. The enhancement applies. Mr. Harris contends and this is six circuit courts also have applied this test. If the answer is yes, if it's legible to the naked eye, the enhancement should not apply. Are there other standards by other courts? The only question. The other standards I'm referring to there, I think some courts have said it has been rendered less accessible. Less accessible, that goes in, that's from the Carter case but then the word before that is materially changed in such a way that makes it less accessible. Six out of the seven courts including this court, the facts in six out of those seven courts was indisputable that at least one of the numbers was indecipherable. Is that reviewed though by us for clearly erroneous, under the clearly erroneous standard? Not in this case, your honor, because the standard that the judge used was looking at the firearm from 18 inches. Right. In the case below, the police had no problem reading the legible. I know, but didn't the judge make a factual finding? He made a factual finding that he could not observe the correct serial number from 18 inches. The record goes on to say after a more careful examination, he read the correct number. So the record indicates that he did read the correct number. The number was legible from a distance of less than 18 inches. You haven't answered my question yet. I said, did he make a factual finding? Did the court make a factual finding? The finding that he made was he could not read it legibly from 18 inches. So that question is, did he make a factual finding, not what the finding was? Yes, he made a factual finding that from 18 inches he could not read it. Well, I know this much. You apparently just don't want to answer it straight up. I'm not trying to trap you. The point is, you said what the standard is. Yes, your honor. But what the standard is, is not reviewed de novo by us, is it, if the court has made a factual finding? Don't we review the factual finding after the district court has made, has employed the appropriate standard? Isn't that right? The court makes a finding. Yes, your honor. And so we're reviewing the district court's finding. And we would contend you're also reviewing the standard de novo. The standard should not be, can you read it legibly with a naked eye from 18 inches? That's fair to argue, but, you know, we don't want to argue the whole case in one question. I understand, your honor. And the question basically is, what is our role? We're not the jury. We looked at the gun and the question there, that's evidence in the case. Yes, your honor. Looking at that evidence, the court made a factual finding that he could not read it at 18 inches correctly. He wrote down the number and it turned out to be incorrect. And so he concluded it was altered at that point under the statute.  But at this point, at least the fact that he could not read it at 18 inches is a fact that he found. Yes, your honor. And that's reviewable for clear error, right? We're not contesting the fact. No, my question is that's reviewable. Yes, your honor. Okay. I would also submit that the fact demonstrates that he could read it legibly from a distance of late 18 inches. The police could read it legibly. There's no one, there's no indication of record, no, that you could not read that serial number. So your argument is then, at least, is that his factual finding was clearly erroneous. Is that what you're arguing? I thought you said, I thought you just said he could read it from 18 inches. No, he could not read it from 18 inches. That was his finding. But he said, but are you arguing that anybody could read it from 18 inches? I'm arguing that viewing it from 18 inches is an unreasonable standard which should not apply. So you're basically arguing the legal standard. We take the fact that the district court could not read it at 18 inches. Yes, your honor. And when he viewed it closer, he came up with a different number. He came up with the correct number. The correct number. Yes, your honor. And at 18 inches came up with the wrong number. Yes, your honor. And that's the facts of the case. Yes, your honor. And the only way to challenge those is under the clear error standard. Next question is, is that sufficient? Those facts, are they sufficient to find under the statute that the serial number been altered? And we're saying the answer is no. Why? He also found the gouges. He said, I see the gouges and the scrapes on them. Yes, and he also found that there's no evidence absolutely that Mr. Harris was the one who put those marks on. No, of course, that's not necessary. It doesn't matter. It's irrelevant, your honor. It's irrelevant. Yes, your honor. We're saying the correct standard is very practical. Can you view the correct serial number legibly with the naked eye? The statute says, uses two simple words, one of which is probably not too much at issue. He possessed a gun with a serial number that was altered or obliterated. Yes, your honor. And obliterated, I think both of you seem to suggest that's a stronger word, meaning more. It has to be gotten off. He had to really file it off. Either totally concealed or totally removed. Yes, your honor. Alterated would be the issue in this case. Yes, your honor. Yes, your honor. And we're saying altered must mean materially changed. And the way you apply that standard is. You're basically citing other circuits that have addressed this. And the circuits seem to have language that they're looking the same thing we are. They're looking at the word altered. And we're trying to figure out what did Congress mean by an altered serial number and what were its purposes. Well, actually, some of the cases cited, they did deal with filed off numbers. But ultimately, the cases, Tywell in the fourth, Love in the sixth, Salinas in the seventh, Jones in the eighth, Carter in the ninth, Justice in the tenth. All specifically say, you could not read this number with the naked eye. You had to resort to scientific techniques. Either using chemicals or using microscopy. I can't even pronounce the word, which means it probably shouldn't be used to the naked eye test. They all say it was either obliterated or altered. Why? Because one could not read it legibly with the naked eye. One had to resort to sending it to the lab. And that's what Mr. Harris is contending here. This is a very practical standard, easy to apply, which addresses the purpose of the guideline. The purpose of the guideline is. Well, what if the number six was on there and someone had closed the circle on the six to make it an eight? And it's now the serial number is clearly visible. Is that a materially altered? Alter, we would suggest, means you change the number itself, the digit itself. Not the entire serial number, but the digit itself is changed. I understand. But that would violate the statute, wouldn't it? Well, it would call for an increase in the guideline enhancement. Right. Yes, sir. It also comes from the statute. Yes, sir. 922K. Yes, sir. 922K or something. Yes, sir. Yes, sir. So if that were the factual hypothesis, then the standard that you're reciting to us would not be applicable. Because we could see it without a microscope or without a lab. Your Honor, the standard is can you read the correct serial number? Allegedly with the naked eye. In the case where a six turns into an eight, that is not. What if I can see that he's done it sloppily? What if he changed a six to an eight, left a gap, and they were sort of chisel marks? They looked like chisel marks. And an expert comes on and says, yes, those are cold chisel marks. He was trying to change the six to an eight. But it appeared generally you look at it at first glance, it's an eight. But then you look at it closer, and oh, it's chisel marks. Is that altered? I sort of lost track of the hypothetical. What is actually the correct serial number, Your Honor? Six. Six is the correct serial number. Yeah, and he chiseled in with two or three chisel marks. You can see the chisel marks, especially under a microscope. Yes, Your Honor. That they're chisel marks. And you can see the correct serial number in that fashion. But when you just look at it casually, it looks like an eight, unless you examined it closely.  Yes, Your Honor. And it seems to me that standard may not fit my hypothetical. I think it would fit. I mean, the guideline is a strict liability. It doesn't require any knowledge at all. The question is, what is the word altered? And we would suggest it means to change the actual digit itself. Do you say that the judge, with his naked eye, could read the number correctly? That's the best inference I can make from the record because the judge says I don't read that from the record. On page 31, he says, I viewed it from a distance of 18 inches and got two digits wrong. Correct. And then he said, after a more careful and scientific Then he says, and in fact, the actual serial number that was determined through more careful and more scientific examination, that was the other examination. That wasn't his. You're suggesting he did a second examination? I'm suggesting he looked closer because there was no scientific examination in this case. There was. No, Your Honor. The police arrested Mr. Harris. They had the gun. They said there's some scratches on it, but the number's legible. There was no scientific examination in the record. Well, here's the point. When he says more careful and more scientific, well, first of all, when he says more scientific, he's not talking about himself, is he? I believe he is. I mean, more scientific would be looking closer. And when he says on a more, what the heck did he do to make it more scientific? Looked closer. That doesn't make it scientific. I agree, Your Honor. But it is science in terms of, part of science is, you know, you have hypotheses, and then you have facts and demonstrations. The first one was at 18, and then you altered it. That is science. I suggest there's no indication in the record that he pulled out a microscope. Is your case in any way dependent on the fact that he looked at it a second time and was able to read the number? Not necessarily. Because when you go back to the police... So, no, no, wait a minute. You said it is. I thought you said he could see it. He could, but our case doesn't rest on that fact. That's not a crime of arresting, but do you argue that upon a closer look, with the naked eye, the judge got the serial number correct? That's my contention of what happened. Well, yes. The judge's question is, yes, you do. No, no, no. I think your answer was correct, at least as I understand your theory. I said, was it necessary that he looked at it a second time? And you said, no. You don't think it's necessary to your argument, do you? No. Why? Because the people... But, now listen. I just want to get... Because that fact... Now, I heard some questions about the second time he looked at it. I don't see that in the record anywhere. What I do see on page 31c says, the gun was placed on the bench in front of the judge, about 18 inches away, and that I was not able to read the correct serial number. That's his statement. I was not able to read. Yes, Your Honor. I read and looked carefully, and the serial number that I wrote down from my observation was U0... I can barely read this number. U032076. He's describing what he did. At 18 inches. Right. Then he goes on to say, and in fact, the actual serial number that was determined through more careful and more scientific examination was U022078. He's clearly referring to the other evidence in the record, not to his second view of that. But there was no scientific examination. Wasn't there a more careful examination done? No, Your Honor. The police just looked at the firearm and read the number. No, there was no scientific examination. It was never sent to the lab. The arresting officers reported that on page 30... What if they used the magnifying glass? There's no indication of any magnifying glass. I know, but you can't say they didn't. Well, the government has the burden to prove it up. No, no. The question is, we have the fact that the district court couldn't read it at 18 inches. Yes, Your Honor. And now we're trying to figure... You're saying that that shouldn't count because the officers could read it right off. And I'm not suggesting... We don't know how the officers got the number. Right? They just gave you... They just said, we have the number. Well, in every other report, all the six circuits that they had to use extraordinary measures, they reported. We couldn't read it with our naked eye. We had to resort to X, Y, or Z. There's no indication here. It's reported... Carter and Perez don't seem to be following that. Carter and Perez say, had been materially changed in a way that made its accurate information less accessible. Yes, Your Honor. And before that... The government argues a standard in this case that altered would mean more difficult to accurately determine the serial number. Your Honor, Carter basically says, before they say that, they said it was unobservable to the naked eye. Well, that's a factual question of what they observed, but the standard they applied was different, right? Right. But the way they imply material change is, is it observable to the naked eye? That's not what Carter said. Carter says a firearm serial number is altered or obliterated when it is materially changed in a way that makes accurate information less accessible. That's a quote from Carter. Perez adopted that. That's right. But Carter, just before that, and Carter, I'll verify on rebuttal, but Carter, before that, the way they apply that is... They applied it to a factual circumstance that was more severe, a conclusion that it was unobservable to the naked eye. Let me ask this, though. If we were to take the record that this judge looked at the gun once from 18 inches and said he couldn't read it, if you just accept that's the reading of the record... Yes, Your Honor. Well, isn't that a factual determination that can't be read with a naked eye that would support a factual finding by the court? No, Your Honor, because 18 inches, we would condemn is, first of all, unreasonable, and it's too subjective to apply to a strict liability test. But somebody's got to be able to look at it. What do you mean? I would suggest, Your Honor, that at least for myself... No, wait, wait a second. You said to the naked eye, that's what you said. Yes, Your Honor. Well, somebody's got to have the naked eye. Yes, Your Honor, but not from 18 inches. Well, you think the law is from the naked eye from 2 inches? From anything. Just look at it with the naked eye, whatever's required. By the way, is that not about natural, to look at it at about 18 inches? Isn't that the way you normally read something? Not a serial number or in a barrel of firearm. But you think the standard, when you say naked eye, you think the standard is upon getting as close as you can with the naked eye. That's what your standard is. As close as necessary for the person. I mean, some people may 12 inches, other people may need 6 inches. To say that 18 inches is reasonable would say is unduly subjective. Well, do you think, wait a minute now, that reads into this that the district judge says, you know, I can't see anything at 18 inches, and I looked at 18 inches and I couldn't see it. Isn't it implicit that he can see normally at 18 inches? I wouldn't. I'm surprised by your argument, because I didn't take this from you. Is your argument that he has to, first of all, I think your argument, I personally think you're reading the record wrong. What this establishes is that the judge looked at it at about 18 inches. Isn't 18 inches about the normal reading distance a person has? I disagree. What do you think, how close do you think a person reads? I think it depends on the person, number one. It also depends on the fact that it's a serial number. That's not an answer. It depends on the person. I said the normal person reads is what? If you're reading a serial number on the barrel of a firearm, I would suggest that 18 inches is not typical. Based on what factor is that not typical? Based on the factor that you have small serial numbers on a shiny barrel that's curved. So that you think the standard is you have to get closer than 18 inches. That's what you think. What is the standard? What is the standard you think has to be applied? I don't understand it. I think the simple standard, you don't have to get into specifics. No, no, no. Can you read it with the naked eye, allegedly, without sending it to the lab? Okay. I think that's the practical standard. And how far away is that naked eye under your standard? You think that 18 inches is completely outside the standard. That's what your argument has to be. That's what you say. In addition to being too subjective to apply to a strict liability enhancement. But if you look at it with the naked eye, it's going to be subjective, isn't it? A person can only report an examination of what he or she sees. Now, you could measure that against an objective standard and say that's not what the numbers are. I don't understand that argument in the slightest. What do you mean it's too subjective? What does that mean? What is a person supposed to do with the naked eye under the test that you would apply? Well, if we were to say that this is... Just tell me, what are you supposed to do? Take the gun and do what? If I have a gun, for instance, if I have a gun... I'm not asking what you would do. I'm saying what is the standard to be applied under this rule? One would do what? Look at it with the naked eye. You can read it legibly without having to pull out a microscope or send it to the lab. But what distance with the naked eye? I wouldn't specify a distance, Your Honor, in terms of minimal. I mean, sometimes you're going to have to look closer. If the serial number is very small, you're going to have to look closer than 18 inches. So is your claim here that the look at this gun from 18 inches as a matter of law is too far away to look at it? I think it's too subjective, especially considering... What is too subjective? The test or the results you get? I don't understand what that means. The test is too subjective. I mean, it depends on... Look as close as you need to look with your naked eye without using any type of specialized technique. What you mean is get as close as you can to maximize your view. That's what you would have the test be. Get as close as you can to maximize or optimize your viewing with the naked eye to view it correctly. Is there evidence that we could see it with the naked eye? Excuse me, Your Honor? Get the correct number with the naked eye? Is there evidence in this record that you could get the correct number even looking closely? Yes, I mean, the police report, the police said it was legible. And I would suggest that since... Where's the police report? It's quoted on page 30, Your Honor, and also the PSR quotes it on page 52 and 67 of the JA. But we don't have the actual report. No, but the report is quoted in the record on page 30, Your Honor. And it's also cited in the PSR page 52 and 67. I see my time is up, Your Honor. Okay, you have some rebuttal while we have Ms. May Parker. Good morning. May it please the Court, my name is Jennifer May Parker, and I represent the United States in this case. The plain language of the Statute of the Guideline Enhancement tells us when it's applicable, which is when it's altered or obliterated. It's clear that the government is not contending here that the serial number was altered. But we are contending that it was obliterated, but we are contending that it was altered. And alter does not mean that it has to not be readable. Perhaps readability goes to obliterated, but it certainly doesn't go to alter. The court in this case said that it looked at the gun and it looked at it from 18 inches and it could not read the serial number. Then he said, and I read and looked carefully, and the serial number that I wrote down from my observation was U032076. Well, that's just what I read. Why don't you tell us what happened? How many times did the court look at the weapon? It appears to me that... How did it appear? Do you know? Do you know? Once. Were you there? No. Okay. That's just your interpretation of that language that he looked at it once. Yes. And then the court was referring to something else, which I believe is the police report that is not in the record, but is cited to in the... Judge Shedd didn't ask the question again, but do you know what he was referring to? The police report? No, the police report is not in the record. Right. But based on the plain language of what the court says here. The plain language? The plain language. Which never is if it's not there. I'm sorry? Which is never plain if it's not there. Well, what the court says I do not believe is equivocal. Okay. What the court said was, in fact, the actual serial number that was determined through more careful and more scientific examination was something different and two digits were different than the one that the court wrote down. What do you take by reading it? By reading that... Wait one second. Let me ask the question. Do you think the court means by more careful and more scientific examination? I believe that the court was referring to a different examination than the one that it conducted. I got that. Which examination was it? I do not know what examination it was. And do you know from that language that he did not perform that second look? Well, the record... The plain language. We're talking about plain language. Do you know from the plain language that he did not perform that closer or scientific look? No. No, you don't. But scientific, I assume that scientific does not mean that the court performed a scientific examination. Why not? Do you know what science is? Do I know what science is? Yeah. Yeah, I do. And do you think judges can't perform science? No, that's not what I'm saying. Based on this record, it is not... There's no evidence that this court performed a scientific examination on that weapon. Oh, I know. But we're talking about the plain language, and you suggested the plain language meant that it couldn't have been the judge. But it does not. I agree with you. It doesn't say who did it, but it does not exclude the judge. You're reading it in context. Yes, I am reading it in context. Plain language, I know we got into it this morning, but isn't it true when you read a statute or anything else for plain language, you always read it in context, don't you? Yes, you read it in context. And this is in context of the context of what is happening, the context of what else the court is saying. It's not parole evidence, extrinsic. You read it for what it says. That's what plain language is. Is context congressional intent? That's a very good context since they wrote it, but we don't call congressional intent a plain language review of a statute, do we? No. Right. Plain language is to look at what you're looking at to see what it says. Exactly. And you take the ordinary meaning of what the words say. Very well. Okay. And you can say, I looked at it and wasn't able to read it, and then when you describe what else happened was more scientific, you can take that more scientific there does not mean I squinted. Right. Because that's not normally considered fine. You can certainly do that under plain meaning. You look at the other words written with it. Now, how that eventually comes out, I don't know, but I'm kind of astounded. I'm astounded myself. Maybe my colleagues will convince me otherwise, that in fact the actual serial number was determined to a more careful and more scientific examination, that that means he performed it then. Maybe that's what it means, but I'm shocked. I mean, just let me say, that's the first time it ever dawned on me that that's what that meant. I thought he meant in comparing that to somebody else having read it at some other time. That's what I thought. I thought that was referring to the police report. That's my take of it as well. Well, the police report indicates that police officers did it with the naked eye, correct? We don't have the police report, but I will quote to you from the... It was not in the record. You can't quote from it. I will quote to you from the PSR. Is that in the record? The PSR is the record. Is that quoting from the police report? Yes. Okay, go ahead. And it says that the firearm, which bore a legible but defaced serial number, had deep grooves and scratches, which were seized along with the ammunition. Would you agree that legible is the end of the story? Yes. Unless you could say that the wrong number was legible, right? Legible is not the test here. So you agree that it's legible? The court didn't find it to be legible. The government has to concede that it was legible, because that was your evidence. The court didn't find it to be legible. I know. I'm not asking that. The government's case normally, I guess when I was practicing law, it's called a case can't rise in a hide in what you present. You presented a case that the gun was legible, correct? No. We presented a case that the gun had a altered serial number. That's the old issue. You actually presented both. I'm sorry? You presented both. I'm quoting at page 30. It says, this is quoting from the report, the police report. Quote, it appears that the serial number on the gun was altered. Yes. And it describes it. And then it ends by saying, in the same report, however, the numbers are still legible. You presented both. Yes. All right. So the numbers were, which number was altered? The 3 was actually a 2. And the 6 was actually an 8. And what altered it? The deep grooves and scratches that the court found. The deep grooves and scratches. The court said that there were grooves and scratches in the metal of the gun. Well, the deep groove is like an underline. It's under the number. I've seen it. Well, it's that the deep groove is under the number. It's like if someone said, let me underline these numbers. It has nothing to do with the number. Well, the review that you conduct is a review for clear error. That's right. Clearly, that is that. There were scratches across the whole serial number. Exactly. Yeah. Exactly. There were scratches across the, light scratches across that. But you're not contending that that made those numbers illegible, are you? Because I asked you that question. You just pointed out, you said the 3 was read as a 2. What was the other one you said? Is your question, was it the grooves and scratches that made the numbers difficult to ascertain? The groove. Let's deal with the groove. The grooves and scratches. Let's deal with the groove first. The groove was the underline. Did that make it difficult? The court found that, yes. Okay. So it's basically that, but I've seen it now. So you say, other than that, you have nothing else to say other than the fact that the court said it was. Well, we're here to review what the district court did. I'm asking you, do you have anything to add other than the fact that the judge said I couldn't see it? What I would like to add is that your review is for clear error. And so, even if by your examination, you conclude something differently than the district court did, that's not enough. Oh, yes, it is. No, it's not. I can't say it's clear. Suppose, for example, that's not the case, hypothetical. We look at the gun, and it is pristine. Numbers clear as day. You mean to tell me that we have to say, oh, no, I saw it clearly, but the judge saw it differently. You have to conclude that what the judge did, and given the circumstances of the case, that what the judge did was implausible, was just not plausible. If you conclude that, then, of course, you can find that there was clear error. Plausibility is not the standard. According to the Supreme Court, it is. Is clear error? A clear error, when you analyze what it means to be clear error, you look at the evidence, and then you are assessing what the district court did. And your assessment has to take all of the circumstances of the case and decide if the district court's action was implausible, given the circumstances of the case. So, in other words, so you equate implausibility with clear error? No, you will equate that. No, no. That's what I have to do. I'm asking you your argument. Are you saying that implausibility and clear error are synonymous? Yes. Okay, all right. So, now, would you agree that how it happened is irrelevant? Correct. That's correct. So then attempt makes no difference. If you attempt to alter it and don't alter it, that makes no difference, correct? I don't know what you mean by an attempt. For example, you saw evidence of light scratches, but clearly you could read that. Light scratches? Light scratches. Which could be consistent, for example, with wear and tear, for example. Light scratches, but you can clearly read every number. Would that be sufficient? If you can clearly read every number, then you would have to conclude that what the district court found was clearly erroneous. But you agree with me, though, that if it's light scratches and legible, that would not violate that provision, prohibition? If you conclude that those scratches were not an attempt to alter the serial number. Well, attempt is not the issue. It doesn't matter. It's a strict liability. No, no, the strict liability is who does it. That's the strict liability. The alteration or the obliteration, that's not a strict liability. Can you tell me the statute says you have to intentionally do that? Yes. I thought it was just being in possession of one that's obliterated or altered. Well, the who actually alters or obliterated is where the strict liability part of it comes in. Yeah, but not as to the how or the why. Right. As to the how and the why, you take that into consideration in making the determination as to whether it was altered or obliterated. Now, if you are talking that something that just happens wear and tear, then clearly that's not an alteration. But if you see grooves and scratches. No, it's not. Even if you can read them. Even if it was obliterated, it wouldn't be. That's correct. That's your position? Well, I don't know that you can obliterate something by wear and tear. I mean. Oh, yes, you can. You actually can. By goodness. You most certainly can. You ever seen a pair of old shoes, have you? You can obliterate the soles of shoes. Have you walked on enough of them? Yeah, that's a deliberate act. That you're walking on the shoes. You're not deliberately obliterating the shoes. Hell, you hope they last forever. That's why you're walking in them. Because you can't afford new ones. Wear and tear can wear serial numbers off things. I think that. You think that can happen? Well, I guess it's possible that it can. But reholstering a weapon causes friction on the barrel continuously. You would agree with that, wouldn't you? I don't have a gun. I don't know. You don't have a gun, but you. All right, well, then, if that's the case, then you can argue the case at all. Obviously, you're learning counsel. You're saying that you can't imagine how using a weapon, putting it in and out of a holster could cause wear or scratches on a barrel. No, that's not what I'm saying. You're asking me if the kinds of alterations that we're arguing about here today. You're putting something in my hypothetical. I said, do you believe that holstering and reholstering a gun could cause wear and tear on the barrel? I didn't put it that way. You put it that way. Well, if that's your question, then clearly it can. Because you don't have a gun. If that's your question, I understood it to be different. But if that's your question, it can clearly cause wear and tear. Would that be a violation? But we're talking about an alteration to the serial number of the gun. Well, you don't know how it happened. All you're doing is presenting a gun. That's why it makes a strict liability. We don't know who did it. We don't know when it was, how it was. I thought it was the idea you're possessing a weapon that has an obliterated or altered serial. That's the problem. Congress didn't want people to have it. Even if it's your gun, once it wears away, then you should sort of stop possessing it. That's what it seems the nature of the statute is. It doesn't talk about whether or not who did it, how it happened. It's the fact that you are in possession and it is in that state of condition. Correct. Right. I thought that was what you were telling me. If you didn't intentionally do it, it might not be a crime. I thought it was just the fact of what it looked like. Does he claim, is his attack, here's his objection here because it's a strict liability type statute? Or is his objection that the conditions to apply the statute, no matter strict or not, don't attain? Which is it? I think his position is that because you could read the serial number. The condition hasn't been met. That's right. His argument isn't that it's unconstitutional because somebody who gets caught with the weapon who didn't have anything to do with it could be enhanced. I don't understand that to be his argument. His argument is, leaving that argument aside, I did not meet the factual conditions to be enhanced. Correct. Because he said it's legible. Correct. Isn't that right? He read it as legibility to be the standard. Yes, and that's the point that I was making, that legibility is not the standard. That is the alteration that is the standard. I suggest, contrary to the questioning that you were answering just previously, that the words altered and obliterated are active verbs that have intent built into them so that it had to be purposefully, the serial number had to be purposefully attacked such that it was altered or obliterated. I would agree with that. If you can conclude it's purposeful, even though, and then that leaves open the possibility, even if you attack a serial number and try to scratch it off and you're unsuccessful, but you have scratched it and left deep scratches on it, but it can still be read. It seems to me Congress may still be after that. Yes, that is my understanding as well. And in fact... But legibility has nothing to do with it. No, it doesn't. Not for the purpose of this enhancement. Okay. Well, it has something to do with it in the sense that if it had been so altered it wasn't legible, that just makes a stronger case, doesn't it? Yes, and it probably... But you're saying that it could be, you mean it could, well, it may or may not be. You could change one number. Isn't that right? What if you changed a one to a four? It would be altered, wouldn't it? Right? Yes, at least. But it wouldn't be obliterated. Or you think it would still be obliterated? Yeah, because you change the character of what that number is. You change it one to four. It has a completely different meaning. But you think that altered just means that it has to have been, the number has to be changed in some aspect. Not the numeral, but just the face of the material that the number's in has to have been changed. That's your view? Yes. And how do we know, how do we assess that? You know, the other side keeps talking about he did it from 18 inches. What's the test? What you do is you test to see if it's a reasonable thing that the judge did here. To say, I'll examine this gun from 18 inches. And you ask the question, what he did, was it implausible? Was it so clearly erroneous that he should have done something else? I don't know about that now. Don't we look at that as to his finding? So it seems to me, I'm just asking this question, I'm just asking now, isn't it possible that he could have done something, and his finding based on what he did makes sense, but what he did wasn't sufficient to meet the test of what he should have done. Does that make sense? In other words, could it be here that you've got to do more than just take a glance at it? You've got to really study it as best you can. I'm just asking you, is that possible? I think that he did that. In fact, he said it in the record, he said, I looked carefully, I read and I looked carefully in the serial number that I wrote down from my observation was, and he tells the court what he wrote down. So a lot of it comes to the visual acuity of the judge, doesn't it? Well, no, I think that given looking carefully is not visual acuity, looking carefully is a normal standard. It was something that a judge with better eyesight may have seen in that 18 inches. No, I mean, look, there's always a subjective standard when a court is making a finding of fact. It is the court, it's their responsibility, that's what they have to do, and it's the court that has to do it. Nobody else does it, the court does it. And we balance that a lot with the evidence. And in this case, the evidence is the government said it was legible. Yes, yes, yes. So the government says it's legible. Right. The defense clearly says it's legible. It seems to me we all call it issues not joined. Now, on the fact question is already resolved to me. So what you're saying, though, notwithstanding that, the judge could say, well, in 18 inches, I couldn't see it. But then I looked and I read and I looked carefully, and this is what I wrote down. It would be nonsensical for a judge, I think it would be nonsensical for a judge to know he looked at it from 18 inches, and we're supposed to have a parenthetical, but I can't see a darn thing from 18 inches. I mean, isn't that, that is just his effort, by the way. And you see, we're arguing about it, and they prove he's not that scientific at all because it sounds like he's just trying to put down in words what he just did. And my gosh, we're arguing like crazy about it. So maybe his scientific method needs to be improved or something. But at any rate, isn't he just describing for the record? Because the record, the court reporter can't, generally won't note what the judge did. The judge is just saying I looked at it, you know, from about 18 inches and I can't read it. Right. He's not saying, the implication has to be that if it were there from 18 inches from my normal vision, I'd be able to see it. It'd be nonsensical to say he put it at a range that he can't normally see from. What would be his incentive to do that? It'd be none. It'd be like putting, I looked at it from three miles away and I couldn't see it. The only reasonable inference is that's the range at which he would normally view something. And he says that. I think, I think. Well, he didn't say that. He didn't say that's the range I normally view. All right. That's the red light. You don't get a ticket, but if you stop now. Thank you. Thank you. I would ask that you affirm the judgment of the district court. Okay, thanks, Ms. Maybach. Mr. Stott. Thank you. Legibility is the right standard to use for the guideline enhancement. When you have a strict liability. Why couldn't Congress be worried about this messing around with serial numbers and saying, we don't want people even making attempts. Now, if an attempt isn't manifest and can't be proved, that's a problem. So they pass a statute. They want to have the free flow. They don't want people messing with the serial numbers. And so they say anybody who alters or obliterates a serial number is guilty. They didn't say anybody who makes it illegible. They say whoever alters it. And I'm wondering if somebody took a cold chisel and went right across the middle and tried to hit each figure there so as to distort it successfully on some and some not on others like closing the six to an eight and this type of thing. And they get with a microscope or they get with a magnifying glass, they can say, well, we can still figure this out. Just the way you can figure out what's on a disc in a computer even though it's erased. You can see that. But the judge says, I'd look at it and this is what I'm reading based on this number. And there are purposeful marks. Both the judge and the police said these marks look like they're purposefully put at the serial number. And I suggest that's probably important because that's what Congress is after. They do not want to have people handling guns that have been monkeyed with with respect to the serial number. And you're saying there's an eligibility requirement built in. Is that what the courts are? If I may, Your Honor, what I'm saying is, first of all, Congress could have written an attempt into the enhancement. It chose not to. But they didn't write legible in. Did they use the word legible? Did they use alter or obliterate? I know, but you said the test was legible. I'm saying that's what all the circuits are doing. But you said Congress could have. I ask you this question. Did Congress use the word legible? No, Your Honor. Now, let me ask you this. What do you mean by legible? You can read it with the naked eye using your best effort to look at the number that it actually has been assigned to that weapon. The correct number. You can read the correct serial number with your naked eye. You're reading not only legible, you're reading legible as to the original number. As the correct number. Yes, Your Honor. You're adding that phrase to it, too. Yes, Your Honor. Because you clearly admit that an altered number could be legible. I mean, it could be readable. Yes, Your Honor. As Judge Neumeier said, altered means to change the number itself, which is why the test can't be legible. Because an altered weapon could easily be legible unless you carry it in as compared to the original number. That's correct. I suppose if you had some science that could alter it. But that's a double read-in. Read-in legible, which is not in the guideline at all. It's not there for the statute. I guess, is it an enhancement provision? In both places. Okay. In the statute, but you're applying the enhancement. Use the same language. Right. But the enhancement doesn't require knowledge. No, no. We're talking about the language, the language, altered or obliterated. But you read in the word legible, that's not there. And then you further read in the word legible as the original number. Yes, Your Honor. That you would read the correct number. Okay. Okay. Thank you, Mr. Brandt. Are you court-appointed? I'm with the Federal Public Defender. Public Defender, okay. Excuse me. I'm reading the wrong line here. Your Honor, the reason why, if I may just finish, the reason why legibility is important is because the guideline focuses on does the gun appear to be traceable or not. That's what all the cases talk about. They do end up using legibility as the standard. 18 inches standard is not the proper standard. It is can you read it with the naked eye, making your best effort to read it without resorting to scientific evidence. The judge could have read it with any other... I mean, the judge looks like he just was making an observation about what the comfortable distance is for reading. If there's any doubt... He read the serial number and wrote it down. I mean, first of all, we would contest that whether or not he took a second look is not essential because the police read it legibly. Secondly, if there's any doubt... The police says it's legible, but they say it was altered, too, in the very same phrase. In the report. I mean, the police are not interpreting the guidelines. I understand, but they said it is altered and purposefully altered, and they described the alterations, and then they said, but it's still legible. Yes, Your Honor. And so the question is, we don't know how they looked at it to conclude it's legible. They could have had a microscope or they could have had a magnifying glass. Well, to the extent there's any doubt as to whether they read it with the naked eye, to the extent there's any doubt... Does that matter? It does, Your Honor, because the whole purpose of the guideline is addressed as we want to make sure that a gun that appears to be untraceable gets the enhancement. Untraceability. It's messing with the serial number. Congress didn't want guns... There's nothing to evidence that you had to make it untraceable. Because if they said they could read it, let's say just with the naked eye, and he said he couldn't, it's a factual finding. He would be entitled to accept his own non-lying eyes, wouldn't he? And I would suggest to the extent there's doubt that he did look closer... I didn't say that. I don't say that. If he looked at it and he decided upon looking at it that he could not read it, that would be a factual determination he would be entitled to believe. Except we're saying that using an artificial standard like 18 inches is not the proper standard. He observed that. He's trying to describe for the record how he tried to read the serial number. Now, if I sit there and I read the report... Now, I'm reading this report, and it's not 12-point font or 14-point font. I've got it about 18 inches away from me. I'm describing for the record what I'm doing. Isn't that what he's doing? That's correct, Your Honor. And we're saying that... But that's not the standard. The basic standard is it's at reading distance. It's not across the room or something. It's where I normally read. Well, it's what you need... to read a serial number on a gun, whether it be 6 inches or 12 inches. For him, that's what he... What he thought was comfortable was 18 inches, right? There's no indication of why he chose 18 inches. But wouldn't he... He wouldn't have chosen... Isn't it nonsensical to say he would have chosen... Isn't it completely nonsensical to say he would have chosen a range from which he knows he can't see anything? That's nonsensical. I agree, Your Honor. I also think that the record at least implies that he took a closer look, and that if there's a question... No, I'm not sure. You know, I've looked at it again since it's been raised here in the courtroom, and it sounds to me since there was a report handed up to the judge on the prior page which has the language we talked about, which said it had been altered, that there were scratches, purposeful scratches with some deep gouges, but it was legible. The judge then says he looks at it and writes the number down. Then he adds that that's different from the number that was derived from more scientific methods. And I think that's probably pretty clearly referring to the prior page where he had the case report. I would respectfully ask the court to dissent there was doubt as to whether there was any scientific methods at all and he needs to be remanded to determine that. Well, he didn't... More scientific instead. What he did was scientific too. He did a test and wrote it down. Right? Isn't that an observation? To the extent looking closer counts as scientific, I would say that that's what happened. My time is way up, Your Honor. I would ask you to vacate and remand because the gun was legible and that should be the standard. You want to remand what? To look at the gun closer? I want to remand with the direction that the enhancement does not apply. And resent it. And the guidelines should be 57 to 71 minutes. Thank you, Your Honor. All right. We'll adjourn court until tomorrow morning and we'll come down and greet counsel. This honorable court stands adjourned until this afternoon at 3 o'clock. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Roger L. Gregory, Dennis W. Shedd